IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ISAIAH GUNARTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:10-cv-00767-JPG-PMF |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

This matter comes before the Court on the issue of exhaustion of administrative remedies. The defendant, Mr. Houer, has filed a responsive pleading to the complaint in which he asserts the affirmative defense of failure to exhaust administrative remedies. A "*Pavey*" evidentiary hearing was held in this case on December 2, 2011. *See* Doc. 55. For the following reasons, it is **RECOMMENDED** that defendant Houer's affirmative defense of failure to exhaust administrative remedies be **DENIED**.

**I.  Background**

On June 21, 2011, the Court summarized the relevant facts of this case as follows:

> This summary of the facts is drawn from the First Amended Complaint (Doc. 16). Plaintiff suffers from multiple sclerosis and is confined to a wheelchair. He alleges that while he was housed in the segregation unit in Menard Correctional Center, on June 16, 2009, the toilet in his cell stopped working. When the plumber came to repair the toilet, he also tried to fix the leaky sink, which was dripping water onto the cell floor. Unfortunately, the plumber broke the sink, so Plaintiff then had no running water at all in the cell, other than the water in the toilet. The sink remained broken for 38 days, during which Plaintiff had no fresh drinking water, and had to resort to drinking his toilet water. He also had only the toilet water to brush his teeth, wash his face and body, and to wet down his body in an attempt to stay cool. Plaintiff had to continue to use the same toilet to defecate and urinate.

1

> Because of Plaintiff's multiple sclerosis, he must drink water regularly to avoid dehydration and overheating, which can lead to complications of his medical condition. This need is most acute during the summer months. During the 38 days Plaintiff was without fresh water (June 16 to July 24, 2009), his cell was very hot. Plaintiff experienced discomfort and overheating throughout this period, and many times vomited while attempting to drink the toilet water.
>
> Defendant Correctional Officer Mr. Houer was the wing officer for Plaintiff's cell area, was present on June 16, 2009, when the plumber broke Plaintiff's sink, and was aware the sink was broken. Defendant Houer continued working as the wing officer, on duty five days per week for the entire time Plaintiff was without a functioning sink. Defendant Correctional Officer Mr. Long was the wing officer the other two days of the week. Plaintiff complained to Defendant Houer and to Defendant Long repeatedly about his need for water, asking for the sink to be fixed or to be moved to a different cell with a working sink. Plaintiff alleges both Defendants were aware of the fact Plaintiff was suffering in the summer heat. However, both Defendants ignored Plaintiff's requests, failed to report the problem to any superiors, and did nothing else to remedy the lack of water in Plaintiff's cell.

Doc. 17 at 2-3.

The plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 on October 4, 2010 alleging violations of his constitutional right to be free from cruel and unusual punishment. On August 22, 2011, the defendant filed a motion to dismiss (Doc. 24), which was denied on November 16, 2011 (Docs. 40, 47). The Court will first provide some legal background on the issue of exhaustion of administrative remedies and will then turn to the discussion of the exhaustion issue.

## II.    **Exhaustion of Administrative Remedies; Standard**

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all

2

grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Finally, "[e]xhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their control are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer. *See* 20 Ill.Admin.Code § 504.830. The Chief Administrative Officer typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the Chief Administrative Officer at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues before the merits of the substantive claims may be considered. *See Pavey*, 544 F.3d

3

at 740-42. If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See id*. at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

> (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
> (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### III. <u>Exhaustion as to Defendant Houer</u>

At the December 2, 2011 *Pavey* hearing, the defendant argued that Gunratt did not exhaust his administrative remedies because he failed to appeal to the ARB within the allowable thirty (30) day time period after receiving a decision at step two. The allegations giving rise to this lawsuit occurred from June 16, 2009 to July 24, 2009. According to the grievance attached to the complaint, the grievance was submitted to Gunratt's counselor at Menard on July 22, 2009. *See id*. at 6. The grievance also indicates that the plaintiff received a counselor response on July 24, 2009. *See id*. There is no disagreement that this grievance was filed at step two on or around August 14, 2009. The Menard Grievance Officer, Jeanette Cowan, testified that her records indicated that a decision was issued at step two on August 17, 2009. Cowan further testified that it is common practice at Menard to issue a response and place a copy of the decision in the inmate's master file. Additionally, Cowan indicated that it is her common practice to send a copy of the decision to the inmate through the institutional mail system. Finally, at step three, there is no dispute that Gunratt sent his grievance to the ARB on or around October 4, 2010. *See id*. at 6.

Because the time between the date that Gunratt received a copy of the decision at step two and the date that Gunratt filed an appeal with the ARB at step three is far greater than thirty days, the defendant argues that this case should be dismissed. In response, Gunratt testified that he never received a copy of the decision at step two so there is no way he could have complied with the allowable thirty day time period for a timely appeal to the ARB. According to Gunratt, the lack of receipt of the decision made administrative remedies unavailable as to this particular grievance. For further support of his position that he did not receive a copy of the decision at step two, Gunratt submits a copy of an affidavit that was notarized on October 10, 2009 and addressed to "Grievance Officer J Cowan at Menard CC." Doc. 51 at 7. The affidavit to Ms. Cowan states, in pertinent part, as follows:

> Regarding: 3 grievances that I filed with you to which you failed to respond or return them to me for appeal purposes should you decide to deny them. I am unable to exhaust grievance remedy without your response [and] return of these 3 grievances. All three grievances were mailed to you on August 4, 2009.
> #1. Grievance – I did not have sink water and had to drink water out of my toilet bowl for 38 days before the sink in my cell was finally fixed. No sink water from 6-16-09 to 7-24-09.
> #2. …
> #3. …

*Id*.

The defendant submits the testimony that is common practice for the decision at step two to be mailed by institutional mail to the inmate and other circumstantial evidence to attempt to prove that Gunratt, in fact, received the decision through the institutional mail. At the *Pavey* hearing, the defendant offered the testimony of the counselor, Barbara Mueller, who indicated that Gunratt did not discuss the grievance in question with her after the grievance was filed at step two. Additionally, the defendant argues that Gunratt could have simply requested a copy of the decision at step two from his master file at any time. With this evidence, the defendant

5

attempts to demonstrate that Gunratt was not very concerned about the status of grievance from the time that he allegedly received a copy in August of 2009 until he sent his grievance directly to the ARB in October of 2010.

The defendant is required to prove by a preponderance of the evidence that Gunratt did not exhaust his available administrative remedies. The defendant has not met his burden of proof. After weighing all of the evidence and evaluating the credibility of the witnesses, it is more likely than not that Gunratt did not receive a copy of the decision at step two. The defendant has not countered Gunratt's testimony concerning his non-receipt of the step two decision with more persuasive evidence. The testimony of the counselor is not persuasive because there is no need for an inmate to discuss a grievance with a counselor once step one is complete. Additionally, an inmate would have no reason to request a copy of a step two decision from his master file when the inmate believes that his grievance is being ignored by the institution. The Court has no reason to question the credibility of Gunratt's testimony. The truthfulness of the testimony was bolstered by the copy of the affidavit executed in October of 2009, which Gunratt sent to Cowan asking for a decision on his grievance. Doc. 51 at 7. Because Gunratt never received a copy of the decision at step two, administrative remedies were effectively unavailable to him.

The Court recognizes the potential for misuse of this holding by prisoners who fraudulently claim that they never received an important item through the institutional mail system. That fails to alter the fact that the defendant has the burden of proof and has not provided persuasive evidence that the inmate received the item in question. The Court may not merely assume that he did. It was pointed out at the hearing that a simple receipt system could alleviate this problem. Inmates must sign for other types of mail, such as legal mail. The Court

does not pretend to understand the potential administrative difficulties of instituting such a policy for other types of mail, but it does seem logical that institutions would have such a receipt system in place for precisely the type of situation that has arisen in this case and other similar situations. *See, e.g., Dole*, 438 F.3d at 812 (finding that exhaustion was unavailable to pro se prisoner who claimed to have filed a grievance that Menard prison officials had no record of and suggesting that future false claims can be minimized by setting up a receipt system for prison mail).

## IV. Recommendation

For the forgoing reasons, it is **RECOMMENDED** that defendant Houer's affirmative defense of failure to exhaust administrative remedies be **DENIED**.

SO RECOMMENDED.

DATED: December 5, 2011.

>*/s/ Philip M. Frazier*
>PHILIP M. FRAZIER
>UNITED STATES MAGISTRATE JUDGE